David Henderson
Law Offices of David Henderson
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone: 907-677-1234
Fax: 888-965-9338
dh@henderson-law.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMES A. LUKE, JR., Individually, as Special Administrator of the Estate of KAREN EVELYN HESS on behalf of said Estate, and as next friend on behalf of K.D.H., J.T.L., and S.M.S., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. _____ <br> ) |

**COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT**

COME NOW plaintiffs and allege as follows:

**Preliminary Allegations**

1) At all times pertinent, plaintiffs' decedent Karen Evelyn Hess [hereinafter

"Karen"] and James A. Luke, Jr. [hereinafter "James"] were adult Alaskan Native residents of Anchorage, Alaska.

2) At all times pertinent, Karen and James were legally married as husband and wife.

3) On or about February 10, 2020, Karen died.

4) On or about March 25, 2020, James petitioned the probate division of the Alaska Superior Court for the opening of Karen's estate in *Matter of Hess, Karen Evelyn*, Case No. 3AN-20-00668PR.

5) The Court granted his petition.

6) On March 27, 2020, the Probate Division of the Alaska Superior Court appointed James as Special Administrator of said Estate.

7) Plaintiffs K.D.H., J.T.L., and S.M.S. are natural minor children of Karen and James.

8) By virtue of his relationship with said minor plaintiffs, James is a fit and proper person to zealously guard their interests, and to represent them in the above-captioned action.

9) The Alaska Native Medical Center [hereinafter "ANMC"] is a state-of-the art hospital and health-care facility offering comprehensive health-care to Alaskan Natives.

10) The ANMC owns and operates the Hepatology and Liver Clinic [hereinafter "the Liver Clinic"], a health-care facility specializing in the diagnosis and treatment of liver conditions.

11) ANMC and the Liver Clinic are owned and operated by the Alaska Native Tribal Health Consortium, a non-profit tribal health organization and co-signatory to the Alaska Tribal Health Compact. As such, it receives funding from, and is an agent of, defendant United States vis-a-vis the Indian Health Service.

12) Defendant staffed the ANMC and the Liver Clinic with various physicians, nurses, and medical practitioners of varying fields and specialties, either through employment or the granting of staff privileges.

13) While acting within the scope of their employment and/or staff-privileges at the ANMC and/or the Liver Clinic, said practitioners tended-to and treated Karen, as alleged herein.

14) More than six months ago, plaintiffs submitted the claim giving rise to the instant suit by way of a "Claim for Damage, Injury, or Death" form [Standard Form 95] filed with the appropriate federal agency or counsel, as contemplated by 28 USC § 2675(a).

15) Said agency or counsel has denied the claim, either expressly or by failing to make a final disposition of it within six months, as contemplated by 28 USC § 2675(a).

## General Allegations

16) In the eight-year period leading up to her death, and perhaps earlier, Karen underwent regular medical treatment as a patient at the ANMC and its Liver Clinic.

COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT
*James A. Luke, Jr., et al, v. U.S.A.*      3

17) Going back to the 1980s, Karen had been infected with Chronic Hepatitis B, Genotype-F, a condition that placed her at high risk of developing Hepatocellular Carcinoma ["HCC"], i.e., the most common form of liver cancer.

18) Other factors exacerbated her risks for HCC including, but not necessarily limited to, her particular comorbidities, age, and hormonal changes brought on by pregnancy and delivery.

19) The above-described factors are known and accepted in the medical community as significantly elevating one's risk for HCC.

20) Despite Karen's known risks, various health-care practitioners at the ANMC and the Liver Clinic failed to adequately suspect-, test-for, diagnose, monitor and treat HCC.

21) Their failure to do so enabled HCC to grow and thrive in Karen's body.

22) Ultimately, practitioners at the ANMC and the Liver Clinic finally did detect and confirm that Karen did have HCC.

23) After a long, painful, and agonizing period of suffering, misery, and decline, Karen ultimately succumbed to it.

24) Had medical practitioners at defendant's facilities tested-for, monitored, and treated Karen's HCC earlier and in a timely manner, they could have arrested it far earlier, and averted Karen's suffering and early demise.

25) As a direct and proximate result of the above-alleged lapses in care, plaintiffs have and will incur economic losses, both past and future, including: (a) health-care expenses, past and future; (b) loss of earnings and earning capacity, past and future; (c) loss

COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT
*James A. Luke, Jr., et al, v. U.S.A.* 4

of household- and non-market services, past and future; (d) loss of subsistence harvesting ability, and; (e) other consequential and out-of-pocket expenses and damages, past and future.

26) As a direct and proximate result of the above-described lapses in care, plaintiffs have and will suffer non-economic damages, both past and future, as allowed in AS 09.55.549(c).

### First Cause of Action -- Negligence and Recklessness

27) Plaintiffs incorporate and reallege the foregoing paragraphs.

28) Defendant's agents, agencies, and/or employees breached the applicable standards of care with the proximate result that plaintiffs have sustained significant harm and damages.

29) Said lapses in care constituted a conscious disregard for plaintiffs' interests and recklessness within the contemplation of AS 09.55.549(f).

30) Defendant United States is liable to plaintiffs, including the Estate, for medical negligence, recklessness, survival, and wrongful death, as authorized and contemplated by AS 09.55.530 through .580, in the minimum sum of $100,000, the exact amount to be proved at trial.

### Second Cause of Action – Losses of Spousal and Parental Consortium

31) Plaintiffs incorporate and reallege the foregoing paragraphs.

32) As a direct and proximate result of the above-described medical negligence and harm, James has and will suffer loss of spousal consortium, services, love, and support.

33) As a direct and proximate result of the above-described medical negligence and harm, plaintiffs K.D.H., J.T.L., and S.M.S. have and will suffer loss of parental consortium, services, love, and support.

34) Defendant is liable to each of said plaintiffs for loss of consortium in the minimum sum of $100,000 as to each, the exact amount to be proved at trial.

WHEREFORE, plaintiffs pray for judgment as follows:

1) For compensatory damages, as alleged;

2) For costs and attorney's fees, as appropriate.

3) For such other relief as the court may deem just and proper.

DATED AT Anchorage, Alaska this 24th day of November, 2020.

    THE LAW OFFICES OF DAVID HENDERSON

    Attorney for Plaintiffs Luke and K.D.H., J.T.L., and S.M.S.

    /s/ David Henderson
    David Henderson
    Alaska Bar No. 9806014